

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BIEDRZYCKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 04 C 3277 |
| TOWN OF CICERO, JASON STROUD; | ) | |
| RICHARD RAMIREZ; JAMES | ) | Magistrate Judge Maria Valdez |
| KOSENESKY; RHONDA GROSS; METRO | ) | |
| PARAMEDIC SERVICES, INC.; | ) | |
| ANTHONY GEIGER; JOSEPH WINKLER; | ) | |
| AND JOHN/JANE DOES 1-10 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is now before the court for ruling on four discrete but interrelated discovery motions. The four motions are intertwined to the extent they all deal with the discovery of ambulance reports and other documents, many of which likely disclose non-party medical information and treatment histories.[1]

The four motions before this Court are as follows. First, defendant paramedics, Anthony Geiger and Joseph Winkler ("Geiger and Winkler"), move to quash plaintiff's subpoena to non-party Loyola Medical Services ("Loyola") [45] (Defs. Geiger & Winkler's Mot. to Quash at 1), a

---

[1]The Court has not undertaken an *in camera* review of the documents in dispute, and finds the document descriptions provided by parties sufficient to reach the decisions on the legal issues raised.

regional medical resource center with supervisory powers and authority over defendant paramedics and their employer Metro Paramedic Services, Inc. ("Metro"). Similarly, defendant Metro, the town's contracted provider of ambulance/paramedic services, moves to quash plaintiff's subpoena to Loyola and to quash plaintiff's production request of the defendant Town of Cicero ("Cicero") [48] (Def. Metro's Mot. to Quash at 1). Third, plaintiff moves for the entry of a protective order for the handling and disposition of ambulance reports and financial information sought in discovery [52] (Pl.'s Mot. for HIPPA Qualified Protective Order at 1). Finally, plaintiff moves to compel production of select ambulance reports by defendant Metro [54] (Pl.'s Mot. to Compel Produc. at 1).

For the reasons the Court sets out below, the defendants' motions to quash are DENIED, the plaintiff's motion for the entry of a protective order is GRANTED, and the plaintiff's motion to compel production is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This lawsuit arises from a July 7, 2003 incident in which defendant paramedics and police responded to a 911 call from the apartment of the plaintiff, Richard Biedrzycki. Plaintiff alleges, in part, that the paramedics failed to provide appropriate medical care and that the officers and paramedics battered him. Plaintiff also alleges that the defendants, exclusive of defendant Metro, engaged in a conspiracy to deprive him of his constitutional rights and engaged in a malicious prosecution.

2

Plaintiff brings this action under 42 U.S.C. § 1983, 42 U.S.C. § 12132, 29 U.S.C. § 794(a), and state law. (Compl. at 2.) There are mixed federal and state claims pending against four named police officers, Cicero, and paramedics Geiger and Winkler. Metro is the only defendant the plaintiff sues solely under state law.

## DISCUSSION

### A. Defendants' Motions to Quash

On March 2, 2005, plaintiff issued a subpoena *duces tecum*, pursuant to Federal Rule of Civil Procedure 45 ("Rule 45 subpoena"), to the keeper of records for Loyola seeking a number of ambulance reports and other documents with a return date of March 15, 2005. Thereafter plaintiff served document requests, pursuant to Federal Rule of Civil Procedure 34 ("Rule 34 production request"), on Cicero and Metro for a number of similar documents.

On March 28, 2005, well after the standing return date for Loyola, defendant paramedics moved to quash the Rule 45 subpoena served on Loyola on two grounds: (1) that the discovery requested would disclose privileged medical information and (2) that the discovery requested would result in an undue burden on Loyola. (Defs. Geiger & Winkler's Mot. to Quash at 1.) Two days later, defendant Metro moved to quash on the same grounds, plus it objected to the Rule 34 production request served on Cicero on grounds of undue burden and privilege. (Def. Metro's Mot. to Quash at 1.) On April 26, 2005, defendant paramedics joined defendant Metro's effort to oppose the Rule 34 production request served on defendant Cicero. (Defs. Geiger & Winkler's Reply at 1.)

3

## I.     *Subpoena Served on Non-Party Loyola*

Loyola, the subject of the Rule 45 subpoena, complied and produced documents to plaintiff before defendants filed either motion to quash. Today, plaintiff has most of the Loyola-disclosed records, and defendants have declined receipt of these documents until the time that this Court rules on pending motions. (Pl.'s Mem. in Opp'n at 2, 9.)

Plaintiff's original subpoena to Loyola sought production in 10 areas, specified in an attached rider. Defendants assert that they do not raise arguments against production "regarding emergency medical services provided to the Plaintiff." (Def. Metro's Reply at 3; Defs. Geiger & Winkler's Reply at 1 (consisting of rider ¶¶ 1.a, 1.b, and 2).) Defendants, moreover, state that they have no objections to Loyola's compliance with rider ¶¶ 9 and 10 and portions of ¶ 3. (Def. Metro's Reply at 3, 7; Defs. Geiger & Winkler's Reply at 1 (no objection as to rider ¶¶ 9, 10 and the "EMT licenses and continuing education transcripts" requested under rider ¶ 3).) Plaintiff states that Loyola has no documents responsive to rider ¶¶ 1.e, 1.g, 4, 5, 6, 7, and 8, thereby making moot ceratin of defendants' joint objections. (Pl.'s Mem. in Opp'n at 6, 8.) In sum, only defendants' objections to rider ¶¶ 1.c, 1.d, and 1.f and the remaining portion of ¶ 3 remain for this Court to address.

### a.     *Local Rule 37.2*

Plaintiff draws the Court's attention to the fact that defendants' motions fail to comply with Rule 37.2 of the Local Rules of the Northern District of Illinois ("Local Rule 37.2"). (Pl.'s Mem. in Opp'n at 2.) In pertinent part, Local Rule 37.2 provides that:

4

> [the] court *shall* hereafter refuse to hear any and all motions for discovery and production of documents under Rule 26 through 37 of the Federal Rules of Civil Procedure, unless a motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's.

Local Rule 37.2 (emphasis added).

Local Rule 37.2's consultation requirement encourages resolution of discovery disputes without judicial involvement. Yet, defendants concede that they did not comply and, in fact, attempt to minimize the importance of the meet-and-confer requirement by chastising plaintiff for his "insistence on a conference that would have been fruitless. . .." (Def. Metro's Reply at 2-3; Defs. Geiger & Winkler's Reply at 1.) Local Rule 37.2 is not a *suggestion* to the parties, rather it is a mandate. Defendants Metro, Geiger, and Winkler do not get to make a unilateral decision to disregard a Local Rule because they find the subject matter to be "a distraction from the real issues." (Def. Metro's Reply at 2; Defs. Geiger & Winkler's Reply at 1.) Defendants flippantly ask this Court to "not allow plaintiff's reliance on a technicality" to overshadow their arguments. (Def. Metro's Reply at 3; Defs. Geiger & Winkler's Reply at 1.) However, "[f]ailure to comply with the local rules is not merely a 'harmless technicality,' but can be a 'fatal' mistake." *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, 2004 WL 3021842 at *4 (N.D. Ill. 2004).

Given the apparent mandatory language of Local Rule 37.2, this Court could strictly enforce the import of the rule and deny the motions to quash in their entirety as plaintiff requests. *See, e.g., Sondker v. Philips Elecs. N. Am.*, 2004 WL 1687016 at *2 (N.D. Ill. 2004) (striking moving party's motion for failure to comply with Local Rule 37.2's consultation statement

5

requirement). However, out of deference to the important issues of physician-patient and medical record privilege defendants raise, this Court will not exercise its discretion to deny the motions to quash for failure to abide by Local Rule 37.2. Plaintiff's request to deny the motions on this basis, while well-grounded, is denied.

### b. *Standing*

Plaintiff asserts that defendants lack of standing to challenge the subpoena to non-party Loyola. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." *Kessel v. Cook County*, 2002 WL 398506 at *2 (N.D. Ill. 2002) (citation omitted). However, "[a] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's *legitimate interests*." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (emphasis added), *cert. denied*, 459 U.S. 1035 (1982). *See also United States v. Segal*, 276 F. Supp. 2d 896, 900 (N.D. Ill. 2003). "Legitimate interests" have included claims of privilege. *See United States v. Bodkins*, 2004 WL 2491615 at *3 (W.D. Va. 2004). As such, plaintiff's request for the denial of the defendants' motions to quash for lack of standing is denied in part. The Court finds defendants have a legitimate interest in protecting the physician-patient and medical record privileges held by non-parties, which secures their standing to raise such claims.

However, defendants do not have standing to argue against Loyola's compliance on grounds of undue burden. Defendants urge an "undue burden" argument on behalf of third-party Loyola – which did not raise this objection and has already produced documents on time. *See*

6

*Kessel,* 2002 WL 398506 at *2 (N.D. Ill. 2002) ("Given that subpoenaed parties have produced documents, they obviously have not asserted that the requested production was burdensome or inconvenient, or that the subpoenas sought documents so far removed from relevant issues in the case that the non-parties should be put to the task of producing them.") Like *Kessel,* this Court declines to find the burden of production a "legitimate interest" to support standing for movants to quash discovery subpoenas of another where the third-party fully complied with production, without objection, and within their allotted time. This Court rejects defendants' undue burden objections, and will instead review each of the remaining portions of the subpoena rider called into question by privilege.[2]

### c. *Timeliness of Objections*

Plaintiff served his subpoena on Loyola on March 2, 2005 with a return date of March 15, 2005. (Pl.'s Mem. in Opp'n at 2.) Loyola raised no objections and complied with production on time. Defendant paramedics moved to quash plaintiff's subpoena, in part on grounds of privilege, on March 28, 2005, and then defendant Metro moved to quash on March 30, 2005, roughly two weeks after the window for Loyola to comply or object closed. Plaintiff contends defendants' motions to quash are thereby untimely and should be denied on that basis.

---

[2] The Court notes that the parties jointly raise one fact-related issue that calls into question the sufficiency of Loyola's position to object to the subpoena on grounds of privilege. Defendants raise a concern that the advisory affixed to the subpoena was misleading and left Loyola with the (mis)impression that attorneys for all non-party individuals had been provided enough information to permit them to raise such objections on their own. (Defs. Geiger & Winkler's Mot. to Quash at 2; Def. Metro's Mot. to Quash at 2.) Plaintiff concurs and clarifies that the misleading notices were affixed by Record Copy Services, the process agent of the plaintiff. (Pl.'s Resp. at 6-7 n.5.) This Court has concerns that the advisory placed on the subpoena by plaintiff's agent could have been misleading and served to weaken Loyola's footing to object properly, had it chose to do so. As such, defendants were and are the next best suited parties to subrogate Loyola's potential objection on privilege grounds, which further strengthens their claims of standing to argue privilege. Defendants have standing to object to the subpoena based on privilege, but not undue burden.

Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any matter, not privileged, which is relevant to the subject matter involved in the pending action." This limit "is not self-executing." *Ritacca v. Abbott Laboratories,* 203 F.R.D. 332, 334-35 (N.D. Ill. 2001) (citations omitted); *Applied Systems, Inc. v. Northern Insurance Co. of New York,* 1997 WL 639235 at *1 (N.D. Ill. 1997) (citation omitted). Instead, a party objecting to a discovery request on grounds of privilege must present the objection in a timely and proper manner as defined by the Federal Rules of Civil Procedure or risk waiver of the objection entirely. *See Hobley v. Burge,* 226 F.R.D. 312, 319-20 (N.D. Ill. 2005) (citing *Ritacca,* 203 F.R.D. at 335); *Applied Systems, Inc.,* 1997 WL 639235 at *1. Federal Rule of Civil Procedure 45(c)(2)(B) dictates what is "a timely and proper manner" for one to object to a discovery subpoena: within 14 days after service.

The "waiver of privilege" sanction is a fact-specific inquiry and has been reserved to extreme cases. *See Ritacca,* 203 F.R.D. at 335 (citation omitted) (noting foot-dragging in responding to discovery as grounds to impose a waiver sanction); *Applied Systems, Inc.,* 1997 WL 639235 at *2 (noting sanction is "reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant violations"). "Minor procedural violations, good faith attempts at compliance, and . . . mitigating circumstances militate against finding waiver." *Ritacca,* 203 F.R.D. at 335 (citation omitted). Plaintiff would have this Court believe that defendants' actions rise to level of foot-dragging. However, this court respectfully declines plaintiff's invitation to shuffle down that path.

Plaintiff argues that defendants' delay caused him prejudice, "by making it impossible to resolve the motions before the . . . depositions of Geiger and Winkler" (Pl.'s Mem. in Opp'n at 3)

8

and that defendants have engaged in a "pattern" of disobeying discovery dates (Pl.'s Reply Mem in Supp. of Mot. to Compel Produc. at 1). Defendants offer that there was no prejudice to the plaintiff as deposition dates were continued. (Metro's Reply at 3; Def. Geiger & Winkler's Reply at 1.) As plaintiff has not responded to this factual statement, the Court is left to assume any prejudice, if any, caused by defendants' untimeliness was cured by the deposition continuances. The Court finds that the plaintiff did not suffer any prejudice from the defendants' untimely objections. Moreover, the misleading notice affixed to the Loyola subpoena serves as another mitigating factor arguing against a finding of waiver. For these reasons, plaintiff's objection to defendants' motions to quash the Rule 45 subpoena for untimeliness is denied.

This Court next addresses the remaining portions of the subpoena rider that defendants allege run counter to Federal Rule of Civil Procedure 45(c)(3)(A)(iii) (disclosure of privilege).

### d.    *Disclosure of Privilege*

A review of defendants' pleadings, in light of the mooted claims, reveals a substantial similarity in defendants' objections to rider ¶¶ 1.c and 1.d, so this Court addresses them together. Rider ¶ 1.c asks for "[a]ll documents relating to EMS services provided by EMT Anthony Geiger on July 7, 2003." (Defs. Geiger & Winkler's Mot. to Quash at Exhibit B.) Rider ¶ 1.d requests the same but with regard to Geiger's co-defendant, Winkler: "All documents relating to EMS services provided by EMT Joseph Winkler on July 7, 2003." (Defs. Geiger & Winkler's Mot. to Quash at Exhibit B.)

Defendant paramedics and defendant Metro raise two sources of applicable privilege: (1) HIPAA and (2) state law. First, defendants both construe the Health Insurance Portability and

9

Accountability Act of 1996 ("HIPAA") to ground a cognizable federal physician-patient or medical record privilege. (Defs. Geiger & Wikler's Mot. to Quash at 2-3; Def. Metro's Mot. to Quash at 2-3.) Second, defendants also raises a violation of "the more stringent provisions of Illinois state law governing patient privacy records" (Def. Metro Mot. to Quash at 2; Defs. Geiger & Winkler's Reply at 1), in other words "the physician-patient privilege under Illinois state law" or state medical records privilege (Def. Metro Mot. to Quash at 3; Defs. Geiger &Winkler's Reply at 1). The Court addresses each in turn.

### i.     HIPAA as Source of Applicable Privilege

Defendants' pleadings fashioning a violation of HIPAA's regulations, specifically 45 C.F.R. § 164.512(e), are off the mark. Whether or not HIPAA was violated in this case[3] does little to help defendants clear the threshold inquiry – whether HIPAA provides an applicable federal privilege for quashing a subpoena request under Federal Rule of Civil Procedure 45(c)(3)(a)(iii). The Seventh Circuit has recently provided a clear answer: HIPAA regulations' procedure for obtaining authority to use medical records in litigation, 45 C.F.R. § 164.512(e), is purely procedural in nature and does not create a federal physician-patient or hospital-patient

---

[3]As defendants point out, HIPAA's regulations, specifically 45 C.F.R. § 164.512(e), authorize a "covered entity" to disclose private health information in judicial proceedings, in part, under either an order of a court or "in response to a subpoena, discovery request, or other lawful process" if the party seeking the information either notifies the patient or makes a "reasonable effort" to secure a qualified protective order. *See Northwestern Mem'l Hosp. v. Aschroft,* 362 F.3d 923, 925-26 (7th Cir. 2004). Whether or not Loyola is a "covered entity" for HIPAA purposes is not a determination this Court need reach. However, the one fact-specific issue seems clear: plaintiff sought a protective order, albeit late and well after the fact of Loyola's compliance with the subpoena, when HIPAA appears to require plaintiffs seeking disclosure under 45 C.F.R. § 164.512(e)(1)(ii)(B) to notify the subject of the subpoena that "reasonable efforts *have been made* by such party to secure a qualified protective order" prior to the time of the disclosure request. *See* 45 C.F.R. § 164.512(e)(1)(ii)(B) (emphasis added). This potential lack of compliance with HIPAA, while related to these events, is not relevant to the Court's inquiry as to the applicable source of privilege.

privilege. *Northwestern Mem'l Hosp. v. Aschroft,* 362 F.3d 923, 925-26 (7th Cir. 2004). Thus, defendants' reliance on HIPAA as a source of privilege is unfounded.

### ii. State Law as Source of Applicable Privilege

Defendants rely, in the alternative, on state physician-patient/medical records privilege as the source of the applicable privilege on which they frame their motions to quash. (Def. Metro's Mot. to Quash at 3; Defs. Geiger & Winkler's Reply at 1.) According to defendant Metro, any response to the subpoena's ambulance records request would necessarily disclose medical information of the patients treated by defendant paramedics. (Def. Metro's Resp. to Mot. for Protective Order at 2.) Under defendants' argument, state law governs privilege in this matter and removes from discovery the ambulance records that Loyola turned over. (Def. Metro's Mot. to Quash at 3; Defs. Geiger & Winkler's Reply at 1.)

Plaintiff, on the other hand, argues that state law is wholly inapplicable, (Pl.'s Mem. in Opp'n at 7-8), and that the ambulance records are relevant to both the federal and state claims paving the way for the application of the federal privilege standard over a state standard (Pl.'s Mem. in Opp'n at 12-13). While Illinois does recognize the privilege, "federal common law does not recognize a physician-patient privilege." *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 506-07 (7th Cir. 1995) (citing *Whalen v. Roe,* 429 U.S. 589, 602 n.28 (1977)).

Although the mere pendency of litigation in federal court does not justify applying federal privilege law at the expense of state privilege law, Rule 501 of the Federal Rules of Evidence guides the determination on whether material sought in discovery is privileged and by which

standard. *See Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (per curiam). Rule 501 reads:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, . . . privilege . . . shall be governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law.

FED. R. EVID. 501.

From the express language of the above Rule, two conclusions are clear. First, when a plaintiff asserts only federal claims, federal privilege law governs. *See Northwestern Mem'l Hosp.*, 362 F.3d 923, 926 (7th Cir. 2004) (noting federal common law the source of privilege in federal-question suits). Second, when the case is before a federal court under diversity jurisdiction, state privilege law applies. Fed. R. Evid. 501. What is unclear under Rule 501, however, is the proper resolution of a case like this, where the plaintiff asserts commingled federal and state claims and relevant evidence may be privileged under one but not the other. *See Jaffee v. Redmond*, 518 U.S. 1, 17 n.15 (1996) (noting the lack of clarity but finding resolution unnecessary to decide that case); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 5434 at 861-64 (1980 ed. & Supp. 2005) (noting uncertain legislative history on point).

The Seventh Circuit follows the "usual solution by the courts" in cases where federal and state privilege law collide – "a preference for federal privilege law when it conflicts with state privilege law." 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 501.02[2][c] at 501-14 (2d ed. 2005 & Supp. Feb. 2005) (noting at least seven federal circuits

12

courts, including the Seventh Circuit, opt for the application of a federal privilege over a competing state privilege when evidence is relevant to both federal and state claims).

The appellate and trial courts of the Seventh Circuit have sided with this majority trend. *See Northwestern Mem'l Hosp. v. Aschroft*, 363 F.3d 923, 925 (7th Cir. 2004) ("The enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege regarding medical records were applicable to all federal cases."); *Equal Employment Opportunity Comm'n v. Illinois Dep't of Employment Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) ("When state and federal statutes clash, the Supremacy Clause of the Constitution gives the federal statute controlling force. Rule 501 of the Federal Rules of Evidence reinforces this message in the domain of evidentiary privileges."); *Mem'l Hosp. for McHenry County*, 664 F.2d at 1061 n.3 (7th Cir. 1981) (per curiam) (applying federal privilege law in a federal action notwithstanding the presence of a supplemental state claim); *Hugley v. The Art Inst. of Chicago*, 981 F. Supp. 1123, 1126 (N.D. Ill. 1997) (court is not required to recognize state-law privilege in a case with "[t]he principle claims" being federal despite one supplemental state claim).

While the state standards for privilege are most often not followed in a case with mixed federal and state claims, they are not completely disregarded either. *See Mem'l Hosp. for McHenry County*, 664 F.2d at 1061. "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at *no substantial cost* to federal substantive and procedural policy." *Id.* (citation omitted) (emphasis added). One occasion where a state privilege standard can apply in a mixed federal question with a supplemental state law claim case is when the contested evidence is only relevant

13

to the state claim. *See Freeman v. Fairman,* 917 F. Supp. 586, 588 (N.D. Ill. 1981). Yet, the contested documents in this matter are not only relevant to the state claims.

Plaintiff alleges that the ambulance reports are relevant to his establishing the elements of Count IV (§ 1983 malicious prosecution) and Count V (§ 1983 conspiracy), as well as serving possible impeachment purposes or evidence to prove motive, intent, and/or *modus operdani.* (Pl.'s Reply Mem in Supp. of Protective Order at 8 n.6, 12-14.) We need not resolve the admissibility of ambulance reports for such purposes at such an early stage in the litigation. However, relevance in discovery is a far broader concept than under the Federal Rules of Evidence. It is well settled that relevance for discovery purposes, is to be interpreted broadly. *See Goldman v. Checker Taxi Co.,* 325 F.2d 853, 855 (7th Cir. 1963) (citing *Hickman v. Taylor,* 329 U.S. 495 (1947)). And, relevant material for discovery purposes may encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Minch v. City of Chicago,* 213 F.R.D. 526, 527 (N.D. Ill. 2003) (internal quotations omitted) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). Plaintiff's assertion that the Loyola-disclosed material is relevant to his federal claims seems reasonable, as it may prove to bear directly on or lead to other matters that may bear on his causes of action rooted in federal law. The above, taken together, supports the application of the federal law on privilege regarding physician-patient and medical record privilege over the corresponding state standards. There being no such privilege under federal law, the disputed

documents are discoverable. Defendants' motions to quash the subpoena to Loyola with respect to rider ¶¶ 1.c and 1.d are denied.[4]

### iii.    *Applicability of State Law Privilege to Metro Alone*

Defendant Metro invites this Court to apply the state law privilege standards to it alone. (Def. Metro's Mot. to Quash at 5-6.) Defendant Metro argues "[i]t is sued . . . only on state law claims, and it cannot be disputed that state law privileges apply to state law claims." (Def. Metro's Reply at 6). Simply put, defendant Metro has misread the applicable case law in this area. Defendant Metro cites *Freeman v. Fairman*, 917 F. Supp. 586 (N.D. Ill. 1996), in support of a blanket application of state law privilege standards to all state claims. However, the proper application of *Freeman* is not that broad. In *Freeman*, the Court's allowance of a state standard on privilege was limited to situations where the discoverable item in question is only relevant to the state claim(s). *Freeman*, 917 F. Supp. at 588. "[S]tate law privileges do not automatically bind federal courts in federal cases." *United States v. Wilson*, 960 F.2d 48, 50 (7th Cir. 1992). Unlike the scenario laid out in *Freeman*, here the discovery sought by plaintiff appears to be relevant to both his state supplemental claims and his federal claims. The distinction proposed

---

[4] The result is the same for defendants' motions to quash rider ¶ 1.f (covering documents pertaining to a specific ambulance run, incident # C307-283) and the remaining portion of rider ¶ 3 (covering letters of commendation). Similar to their grounds of objection to rider ¶¶ 1.c and 1.d, defendants base their objection to rider ¶¶ 1.f and 3 by asserting that the Illinois physician-patient privilege and the state privilege contained in the Medical Studies Act, 735 ILCS 5/8-2101 and 2102, are the applicable sources of privilege. (Defs. Geiger & Winkler's Mot. to Quash at 3-4; Def. Metro's Mot. to Quash at 4-5.)

As stated previously, this Court need not delve into the scope of state case law or statute, as neither inquiry furthers the threshold question: whether federal or state privilege law applies to the case at hand. In a non-diversity case such as this, the existence of a privilege must be determined by reference to federal common law, even where, as here, the action includes supplemental claims under state law. *Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d at 1061. There being no federal physician-patient or medical record privilege and recognition of either state standard would stand in direct conflict, defendants' motions to quash portions of subpoena rider ¶¶ 1.f and 3 are accordingly denied.

15

by defendant Metro – applying a competing state privilege to one defendant – finds no support in case law.

Moreover, common sense seems to foreclose this possibility as well. If federal courts are reluctant to apply two different privilege standards to different claims before the same trier of fact, why would a court add an extra layer of complexity – limiting instructions on whether certain items can be used as to certain defendants and not the others on only certain claims. *See, e.g., WM. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 103-04 (3d Cir. 1982) ("Obviously applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable. . . . One rule or the other must govern."). Defendant Metro's request to apply a state privilege to itself alone, for the above stated reasons, is hereby denied.

### B.    *Production Request Served on Defendant Cicero*

On February 18, 2005, plaintiff served identical Rule 34 production requests on defendant Metro and defendant Cicero. (Pl.'s Mem. in Opp'n at 10.) Neither defendant Metro nor defendant Cicero have complied, instead each has filed objections. (Pl.'s Mem. in Opp'n at 10.) Interestingly, defendants Metro, Geiger, and Winkler move to "quash" the production request on Cicero and not the one served on Metro. (Def. Metro's Mot. to Quash at 6; Defs. Geiger & Winkler's Reply at 1; Pl's Mem. in Opp'n at 10.) This Court also believes defendants' motion to "quash" the production request propounded to Cicero is best construed as an objection to discovery and proceeds accordingly.

16

At the heart of the objection are three months of ambulance reports prepared by defendant paramedics. The February 18 request calls for the production of:

> All ambulance reports, incident reports, run reports and other writings – prepared or signed by defendant Winkler or defendant Geiger – regarding EMS calls to which one or both of them responded and/or medical services one or both of them provided between April 7, 2003 and July 7, 2003.

(Pl.'s Mem. in Opp'n at Exhibit C-D.)[5] Defendants argue that the ambulance reports sought impose an undue burden on defendant Cicero and that the ambulance reports are privileged, and thereby not discoverable.[6]

## 1.    *Timeliness of Objections*

Plaintiff filed his document request on defendant Cicero on February 18, 2005. Cicero responded with their objections on April 1, 2005, well after the time allowed under the Federal Rules of Civil Procedure. Rule 34(b) requires "[t]he party upon whom the request is served shall serve a written response within 30 days after the service of the request." Defendants fail to address defendant Cicero's untimely response. (Def. Metro's Reply at 7 (no mention of untimeliness); Def. Geiger & Winkler's Reply at 1.) "The failure to object to a discovery request in a timely fashion may constitute a waiver of the objection, including objections based on privilege." *Applied Systems, Inc.*, 1997 WL 639235 at *2 (N.D. Ill. 1997) (citations omitted).

---

[5]On February 25, 2005, plaintiff served a similar Rule 34 request on defendant Metro albeit broader in scope. (Pl.'s Mot. to Compel at 1.) The February 25 production request calls for documents pertaining to medical services provided by defendant paramedics at two specific addresses through July 7, 2003. The February 25 request is the subject of plaintiff's motion to compel and is discussed below in a separate portion of this opinion.

[6]Plaintiff does not set forth any objection to the standing of defendants Metro or paramedics to assert discovery objections to written discovery propounded to defendant Cicero. Although this Court has previously address such standing problems, *supra* at 7, the Court will address the timeliness of defendants' objection nonetheless.

However, the rules of discovery do not automatically require waiver in such a situation. *Id.* "Rather, waiver . . . is a serious sanction reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant violations." *Id.*

Courts have reserved the waiver sanction to extreme cases. *See Ritacca,* 203 F.R.D. at 335 (noting unjustified delay in responding to discovery as grounds to impose a waiver sanction). On more than one occasion, defendants fail to justify their untimely response to the February 18, 2005 requests, including those served on defendant Cicero and defendant Metro. Moreover, defendant Metro fails to respond to plaintiff's timeliness objection in their written reply. Accordingly, this Court believes Cicero's late response and defendants' non-responsive pleadings constitute the type of occasion whereby Rule 34(b)'s 30 day requirement should be strictly construed. Defendant Metro's and defendant paramedics' motions to "quash" plaintiff's production request propounded to defendant Cicero is hereby denied.

### C. *Plaintiff's Motion for a Protective Order*

Plaintiff files a motion for the entry of a HIPAA qualified protective order that would serve to restrict the handling of and order the destruction of ambulance reports and a number of limited documents related to finances disclosed or to be disclosed in discovery. (Pl.'s Mot. for Prot. Order at 1.) The plaintiff's proposed order would cover, in part, the documents plaintiff requested from Loyola and defendant Cicero. (Def. Metro's Resp at 1-2). A plain meaning review of the plaintiff's proposed order indicates it would also cover the ambulance reports plaintiff seeks from defendant Metro. Defendant Metro opposes the entry of the protective order on grounds of privilege, again citing to state law privileges. For the reasons set out above, state

law of privileges do not govern the privilege determination in the matter at hand. As the federal privilege standard applies, there is no applicable physician-patient or medical records privilege that removes the ambulance reports from the reach of discovery.

Defendant Metro, arguing in the alternative, asserts that HIPAA mandates "very stringent standards for the de-identification of medical records," which Metro asserts would be violated should records be turned over in compliance with plaintiff's protective order, as proposed. (Def. Metro's Resp. at 3-4). Metro's read on HIPAA's de-identification standards is misguided. HIPAA does not mandate de-identification, instead it offers multiple standards and means to guide covered entities in properly disclosing protected health information. *Compare* 45 C.F.R. § 164.514 (standard for de-identification) *with* §§ 164.512(a) (standard for disclosure required by law); 164.512(b) (standard for disclosure for public health activities); 164.512(e) (standard for disclosures for judicial and administrative proceedings); 164.512(f) (standard for disclosure for law enforcement purposes); 164.512(j) (standard for disclosure to avert serious threat to health or safety). As HIPAA's de-identification regulations are but one means of compliance, the Court denies defendant Metro's request that the protective order be denied for failure to comply with HIPAA's de-identification option. Moreover, entry of plaintiff's proposed order would also obviate the need for HIPAA de-identification.

Next, the Court turns to plaintiff's proposed order. The Seventh Circuit concluded in *Northwestern Memorial Hospital* that HIPAA's standards for disclosure of protected health information in judicial proceedings, 45 C.F.R. § 164.512(e), "should [only] be understood . . . to create a procedure for obtaining authority to use medical records in litigation." 362 F.3d at 925-26. Plaintiff seeks a protective order that meets HIPAA's "qualified protective order" standard.

19

For purposes of HIPAA's standards for disclosure in judicial proceedings, a "qualified protective order" means, with respect to protected health information, an order of a court that "(A) [p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation . . . for which such information was requested; and (B) [r]equires the return to the covered entity or destruction of protected health information (including all copies made) at the end of the litigation . . .." 45 C.F.R. § 164.512(e)(1)(v). Review of plaintiff's proposed protective order reveals it would limit the parties to use of ambulance reports to the litigation at hand and order their destruction at the conclusion of all trial and appellate proceedings. (Pl.'s Proposed Protective Order at 1-2.) The Court finds the plaintiff's protective order meets HIPAA's two-prong definition of a "qualified protective order." Moreover, there are no arguments before this Court that defendants object to the non-HIPAA provisions of the plaintiff's proposed order. (Pl.'s Reply Mem. in Support of Protective Order at 10.)

Finally, defendant Metro asks for additional language in the proposed protective order should it be granted. (Def. Metro's Resp. to Protective Order at 4.) Defendant Metro seeks a clear statement that the proposed protective order would not govern admissibility for any information produced pursuant to the order. As plaintiff does not object to defendant Metro's clarifying language (Pl.'s Reply Mem. in Support of Protective Order at 10), the Court grants Metro's request for modification. Accordingly, the Court grants the plaintiff's motion for a HIPAA qualified protective order provided that parties meet and confer to craft a new proposed order that is consistent with this opinion within five business days.

## D. *Plaintiff's Motion to Compel Production of Documents by Defendant Metro*

On February 25, 2005, through his third document request to defendant Metro, plaintiff sought all documents, including ambulance reports, related to two particular addresses in which defendants Geiger and/or Winkler were involved prior to the date plaintiff alleges he was battered and provided substandard medical services. (Pl.'s Mot. to Compel at 1.) On March 29, 2005, defendant Metro responded to the plaintiff's document request by raising objections on four grounds. (Pl.'s Mot. to Compel at Exhibit A.) Defendant Metro argues that the request is (1) "not calculated to lead to admissible evidence," (2) unduly burdensome, (3) overbroad, and (4) in violation of HIPAA. (Pl.'s Mot. to Compel at Exhibit A.)

In April 2005, plaintiff filed a motion to compel the production of aforementioned documents by defendant Metro. (Pl.'s Mot. to Compel at 1.) In addition to countering each of the four grounds of objection that defendant Metro raises, plaintiff argues that Metro is time bared from raising their objection. The Court begins with the procedural argument.

## I.    *Timeliness of Objections*

Plaintiff argues that defendant Metro's objection to production is outside of the time allowed by Federal Rule of Civil Procedure 34(b). (Pl.'s Mot. to Compel at 1-2.) Defendant Metro cites "an inadvertent clerical error" that accounted for the untimely service of their response to the plaintiff's production request and argues no prejudice to the plaintiff resulted. (Def's Resp. to Mot. to Compel at 2.)

In the absence of a court order or party agreement, Rule 34(b) allows only 30 days for a party upon whom a request for production is served to serve their written response. The Court notes that Rule 34(b) is cast in the mandatory. As such, the clear import of the Rule cannot be

easily escaped. The Court also notes the delayed response time by defendant Metro appears to be a recurrent pattern. Plaintiff asserts that not only was defendant Metro late in responding to the plaintiff's motion to compel, they were late in filing their motion to quash and responding to plaintiff's first discovery request. (Pl.'s Reply Mem. at 1.) Metro has not contested this assertion. Moreover, whereas the Court credited the clerical error of the plaintiff's agent to the advantage of defendant Metro in their motion to quash, the defendant's own "inadvertent clerical error" here will be credited to the advantage of the opposing party. Taken together, these three factors lead the Court to conclude that Metro's failure to serve their objection to the production request in a timely manner is fatal. As such, the Court grants plaintiff's motion to compel.

Even if this Court were to agree with defendant Metro on the timeliness of service, the Court would still grant plaintiff's motion to compel on the independent bases articulated below.

### 2. *Relevance*

Defendant Metro's first basis for objection to the plaintiff's request is relevance. Defendant Metro asserts that the plaintiff's request is "not calculated to lead to admissible evidence." (Pl.'s Mot. to Compel at Exhibit A.) Plaintiff seeks documents relating to any earlier visit by Metro's employees, co-defendants paramedics, to the apartment where plaintiff lives and/or the adjoining three-flat. (Pl.'s Mot. to Compel at 2; Pl's Reply at 2 n.1.) Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Discoverable information is not limited to that which would be admissible at trial. Information is relevant under Rule 26(b)(1) "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevant

material, for discovery purposes, may encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Minch,* 213 F.R.D. at 527.

Plaintiff argues that the ambulance reports sought through his third discovery request are likely relevant to his establishing motive (Pl.'s Mot. to Compel at 2) and to impeach defendants' denial of prior runs to the addresses (Pl.'s Reply Mem. at 2). Defendant, on the other hand, resorts to the fishing expedition defense and argues that given the limited weight such ambulance reports would have in establishing motive, the motion should be denied. (Def's Response to Mot. to Compel at 3.)

Defendant Metro's arguments lack substance. First, arguments as to the sufficiency or weight of such evidence are premature at this stage. Relevant matters for discovery purposes only need to be "reasonably calculated" to lead to discovery of admissible evidence. Thus, the Court finds that the request for documents related to the neighboring address is reasonably calculated to lead plaintiff to admissible evidence about ambulance visits to the plaintiff's home. Finally, with regard to defendant Metro's claim of fishing expedition, the Court notes that the Supreme Court, in a famous passages, has spoken of the proper scope of discovery rules, inclusive of Rule 26. It said, "We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947). Defendant Metro has failed to establish that the discovery requested is irrelevant to any claim.

### 3. *Burden of Production*

Defendant Metro's second objection to the plaintiff's request is that it is unduly burdensome. (Pl.'s Mot. to Compel at Exhibit A.) Plaintiff asserts defendant Metro's grounds for making this claim is unsubstantiated and "made without factual inquiry." (Pl.'s Mot. to Compel at 3.) Counsel for plaintiff reports a "meet-and-confer" conversation with counsel for defendant Metro as to the nature of the burden wherein Metro acknowledged that they had no information as to the number of documents responsive to plaintiff's request or how they were organized. (Pl.'s Reply Mem. at 3.) Defendant Metro has not offered any contrary fact on this point. The Court finds Metro's objection of "undue burden" simply lacking in support.

### 4. *Overbreadth of Request*

Defendant Metro's third ground for objecting to plaintiff's request is that it is overly broad. (Pl.'s Mot. to Compel at Exhibit A.) Specifically, defendant Metro points to the limitless time frame of plaintiff's request. (Def.'s Resp. to Mot. to Compel at 6.) However, this argument is disingenuous. Defendant Metro's assertion belies logic and reasoning. Plaintiff draws the Court's attention to a concession he made before Magistrate Judge Nolan on April 12, 2005. In open court, plaintiff "agreed to limit the request to documents to a period of several months." (Pl.'s Reply Mem. at 3). Defendant fails to articulate why a time factor of several months is overly broad. Accordingly, defendant's objection rooted in overbreadth is denied.

### 5. *HIPAA De-Identification Standards Violation*

Defendant Metro's final basis for objection is that the plaintiff's request violates HIPAA's de-identification procedure. (Pl.'s Mot. to Compel at Exhibit A). The Court, however, agrees with plaintiff's construction of HIPAA. HIPAA does not shield documents in discovery, it only minimizes the disclosure of certain "protected health information" in judicial proceedings. Nor does HIPAA mandate de-identification. Absent court order, parties may comply with HIPAA by either de-identifying or submitting records with "protected health information" to a protective order.

Defendant Metro's objections are without proper support. Plaintiff's motion to compel is hereby granted in part and denied in part. The plaintiff's motion to compel is denied to the extent it seeks records beyond the "several months" concession that plaintiff agreed to in open court. This Court construes the "several months" concession to be five months. Thus, the Court orders defendant Metro to comply with the plaintiff's February 25, 2005 production request related to documents generated by either defendant paramedic covering the two addresses in question from February 7, 2003 through July 7, 2003.

## CONCLUSION

Based on the foregoing, this Court DENIES the defendants' motions to quash, GRANTS the plaintiff's motion for a protective order, and GRANTS IN PART and DENIES IN PART the plaintiff's motion to compel production. Parties must comply by submitting a revised protective order to this Court within five business days of the entry of this order. Defendants must comply

with the motion to compel within 14 days of the entry of this order. Finally, plaintiff is ordered to disclose all records Loyola produced under subpoena that are not in defendants' possession.

**SO ORDERED.**                    **ENTERED:**

Dated: _August 8, 2005_

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**